UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


In re:  REGENCY INTERNATIONAL            (Bankr. Case No. 06-5402)
FLOORING, LLC, Debtor.                   (Chapter 7)
_____/        (Adv. No. 08-80421)


UNITED STATES OF AMERICA,

            Appellant,

                                         File No.  1:09-CV-1146
v.

                                         HON. ROBERT HOLMES BELL
JEFF A. MOYER, Chapter 7 Trustee,

            Appellee.
_____/

## **O P I N I O N**

This matter is before the Court on the government's appeal from the bankruptcy

court's November 6, 2009, judgment in the adversary proceeding filed by Trustee Jeff A.

Moyer against the United States for recovery of a fraudulent transfer.  (Dkt. No. 1, Attach.

1.)  For the reasons that follow, the judgment of the bankruptcy court will be reversed.

## I.

The background facts giving rise to this litigation are not in dispute.[1]  Debtor Regency

International Flooring, LLC, ("Regency") is a limited liability company organized in 2003.

Its two members are James Oonk and Westshore Capital, LLC.  Regency was in the business

_____

[1]For purposes of this opinion, the Court has summarized the facts contained in the
bankruptcy court's bench opinion.  (Bankr. Adv. Pro. Dkt. No. 47, Tr. of Bench. Op. 6-8.)

of selling flooring and accessories associated with flooring. Oonk was the manager of Regency. As a limited liability company, Regency itself did not pay taxes. Instead, its profits were taxed much as they would be with a partnership, with each member being liable for his share of whatever profits were reported by the LLC in a particular year.

On April 17, 2006, approximately six months before the commencement of Regency's Chapter 7 case, Oonk caused Regency to issue a check payable to the Internal Revenue Service ("IRS") in the amount of $82,722. The check includes on its memo line Mr. Oonk's social security number and a reference to "2005 Form 1040." The $82,772 represented Oonk's share of federal taxes for Regency International's 2005 income as had been reported to the IRS by Regency International's accountants in its Form 1065 for 2005. Mr. Oonk submitted the Regency check together with his and his wife's own Form 1040 on April 19, 2006, and the IRS credited Mr. Oonk's account for the entire payment received.

The IRS issued two refund checks to Mr. Oonk, one in the amount of $22,476 on June 12, 2006, and a second one in the amount of $51,995.60 on July 30, 2007, after Mr. Oonk filed an amended return for 2005. (Dkt. No. 1, Attach. 11, IRS Records.)

In its bench opinion and supplemental opinion, the bankruptcy court avoided the $82,772 transfer from Regency to the IRS pursuant to 11 U.S.C. § 548, based on lack of adequate consideration and insolvency. Although the IRS had already refunded a large portion of the $82,772 transfer to Mr. Oonk, the bankruptcy court entered a money judgment against the government in the amount of $82,772 pursuant to 11 U.S.C. § 550, based on the

bankruptcy court's determination that the IRS was the initial transferee of the payment from Regency. (Bankr. Ct. Adv. Pro. Dkt. No. 47, Tr. of Bench. Op.; Dkt. No. 1, Attach. 39, Supp. Op.). The government filed this appeal.

## II.

In reviewing an appeal from a bankruptcy court, this Court applies the clearly erroneous standard of review to the bankruptcy court's findings of fact, and the *de novo* standard of review to questions of law. *In re Gardner* (*Stamper v. United States*), 360 F.3d 551, 557 (6th Cir. 2004).

Under 11 U.S.C. § 548, the bankruptcy trustee is permitted to avoid any transfers of an interest of the debtor in property that was made within two years of the filing date of the bankruptcy petition, if the debtor did not receive reasonably equivalent value, and if the transfer was made when the debtor was insolvent or as a result of which the debtor became insolvent. See 11 U.S.C. § 548(a)(1)(B).

Once it is established that the trustee is entitled to avoid transfers under section 548, section 550 permits the trustee to recover those avoided transfers from particular "transferees." 11 U.S.C. § 550(a).[2] *See Taunt v. Hurtado* (*In re Hurtado*), 342 F.3d 528, 532

---

[2]Section 550 provides in pertinent part:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from --

(continued...)

(6th Cir.2003) (noting that avoidance and recovery are independent remedies and "must be kept analytically separate."). "As is plain from its text, section 550(a)(1) holds initial transferees strictly liable for any fraudulent transfers they receive." *Taunt v. Hurtado* (*In re Hurtado*), 342 F.3d 528, 532 (6th Cir. 2003). "If the recipient of debtor funds was the initial transferee, the bankruptcy code imposes strict liability and the bankruptcy trustee may recover the funds." *In re Red Dot Scenic, Inc*., 351 F.3d 57, 58 (2d Cir. 2003) (citing 11 U.S.C. § 550(a)). "If the recipient was not the initial transferee, however, he or she may assert a good faith defense." *Id.* (citing 11 U.S.C. § 550(b)).

### III.

For purposes of its initial argument on appeal, the government assumes that the requirements of section 548 were met. The government argues, however, that even if there was a fraudulent transfer, the bankruptcy court erroneously held that the IRS was the initial

---

[2](...continued)
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from--

> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
>
> (2) any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(a), (b).

transferee such that the Trustee could recover the entire $82,722 payment from the IRS under § 550(a)(1).

The government contends that the Court should reject the bankruptcy court's determination that the IRS was the initial transferee of the funds from Regency, because the substance of the transaction reveals that it was not the "initial transferee."

The Bankruptcy Code does not define the term "transferee, and there is no legislative history on the point. *Bonded Fin. Servs. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988). Neither does the code defined the terms "initial transferee," "immediate transferee," and "mediate transferee." Alan N. Resnick & Henry J. Sommers, eds., 5 Collier on Bankruptcy ¶ 550.02[4][a], at 550-16 (16th ed. 2010). As a general rule, "the party who receives a transfer of property directly from the debtor is the initial transferee."*Id.* at 550-18. Nevertheless, it is generally understood that "initial transferee" references "something more particular than the initial recipient." *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*, 130 F.3d 52, 57 (2d Cir. 1997). For example, a party who acts as a mere conduit for funds and performs that role consistent with its contractual undertaking, is not an initial transferee within the meaning of § 550(a)(1). The Seventh Circuit determined in *Bonded* that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." 838 F.2d at 893. The Sixth Circuit follows the Seventh Circuit's "widely adopted" dominion-and-control test for determining "initial transferee" status. *Taunt v. Hurtado (In re Hurtado)*, 342

F.3d 528, 533 (6th Cir. 2003) (citing *Bonded*, 838 F.2d at 893; *In re Finley*, 130 F.3d at 57-58 (citing cases that have adopted the dominion-and-control test)). According to the Sixth Circuit, "[a]n initial transferee is one who receives money from a person or entity later in bankruptcy, and has dominion over the funds. A mediate or immediate transferee is simply one who takes in a later transfer down the chain of title or possession." *In re Baker & Getty Fin. Services, Inc.*, 974 F.2d 712, 722 (6th Cir. 1992).

The question of dominion and control concerns legal authority, legal rights and obligations. "'[T]he minimum requirement of status as a "transferee" is dominion over the money or other asset, the right to put the money to one's own purposes.'" *Hurtado*, 342 F.3d at 533 (quoting *Bonded*, 838 F.2d at 893). In essence, "the initial transferee is one who first exercises dominion and control over the debtor's property." *In re C.F. Foods, L.P.*, 265 B.R. 71, 81 (Bankr. E.D. Pa. 2001).

The government contends that although Regency issued the check directly to the IRS, that payment could only reach the IRS as a result of Mr. Oonk's control. The government contends that Mr. Oonk, not the IRS, was the initial transferee because he exercised dominion and control over the funds when he ordered his accountant to write his social security number on the check for his taxes for the 2005 tax year and directed him to mail it to the IRS. Mr. Oonk was in the position to cause the company's reimbursement of him for the tax he believed he incurred as a result of pass-through income of Regency, and the money in substance was paid to Mr. Oonk for him to pay his taxes. Thus, according to the

government, when one looks to the substance as opposed to the form of the transaction, Mr. Oonk was the initial transferee, and the IRS was a mediate or subsequent transferee. Under the government's theory, the fact that Mr. Oonk collapsed the two transactions and had his company write a check directly to the government is a mere formality and should not be used to alter the underlying substance of what occurred.

In support of this argument, the government relies on *In re C.F. Foods, L.P.*, 265 B.R. 71 (Bankr. E.D. Pa. 2001), the relevant facts of which are similar to the facts in this case:

> [T]he debtor transferred funds in the total amount of $1,658,737.00 to the IRS by three checks made payable to the IRS for income tax payments on behalf of Edward Stillman. . . . The income tax payments were based on the debtor's sales figures as reported by David Burry, the vast majority of which were admittedly fraudulent. As a result of having the debtor's former accountant file amended tax returns, Edward and Karen Stillman (the "Stillmans") later obtained a refund from the IRS in an amount of more than $1.4 million.

*Id.* at 79. In *C.F. Foods*, the bankruptcy court held that the IRS exercised dominion and control over the debtor's funds by withholding a penalty from its refund. *Id.* at 80. The court nevertheless held that the IRS was not the "initial transferee" because Burry, as general partner of the debtor, took control of the debtor's funds and used them to satisfy his income tax liabilities. *Id.* at 81. "At the time he made the payments to the IRS, Burry exercised dominion and control over the debtor's funds in a manner that earned him the status of an initial transferee." *Id.* The government contends that because Mr. Oonk exercised dominion and control over Regency's funds in order to satisfy his income tax liabilities, this Court should similarly find that Mr. Oonk, not the IRS, was the initial transferee.

"In determining whether a person has the requisite dominion or control over property sufficient to qualify as the initial transferee, courts should "step back and evaluate a transaction in its entirety." *In re Orange County Sanitation, Inc*., 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997) (quoting *Danning v. Miller* (*In re Bullion Reserve of North America*), 922 F.2d 544, 549 (9th Cir.1991)). Nevertheless, the Court agrees with the bankruptcy court that it cannot simply ignore the form of the transaction. The form of the transaction is significant for purposes of applying § 550(a)(1).

In *Bonded* the Seventh Circuit distinguished between two scenarios where a corporate principal misappropriates funds from a debtor company for the principal's personal use. In a one-step transaction, the principal causes the debtor company to issue a check payable directly to the principal's creditor. In a two-step transaction, the principal first acquires legal title to the funds and then pays the principal's creditor. 838 F.2d at 894. After reviewing the purpose and structure of § 550, the Seventh Circuit rejected the contention that "the apparently formal difference" between a one-step and a two-step transaction should not affect the outcome under § 550. *Id.* at 892. The *Bonded* court held that the two-step transaction is "indeed different" from the one-step transaction. In a one-step transaction, § 550 leaves with the initial transferee, the recipient who is in the best position to monitor where the assets come from, the burden of inquiry and the risk if the conveyance is fraudulent. *Id.* at 892-93. "The initial transferee is the best monitor; subsequent transferees usually do not know where the assets came from and would be ineffectual monitors if they did." *Id.* By contrast, in the

two-step transaction, the principal acquires full dominion and control and accordingly is deemed to be the initial transferee. *Id.* at 894.

In *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir. 1996), the Tenth Circuit noted that "[i]t is clear that the *Bonded* court's discussion of dominion and control refers to dominion and control over **the funds** after the disputed transfer, not dominion and control over the **transferor** before the transfer." *Id.* at 940 (emphasis in original).

In *In re Red Dot Scenic, Inc.*, 293 B.R. 116 (S.D.N.Y. 2003), the district court rejected an argument similar to the one made by the government in this case, i.e., that a principal who, for his own benefit, causes a corporate debtor to make a fraudulent transfer, should be considered an initial transferee under section 550(a)(1). *Id.* at 119. The *Red Dot* court held that the extent to which the principal uses his control for his own benefit in causing the debtor to make a transfer is not a relevant consideration in determining the initial transferee under § 550. *Id.* at 120 (citing *Rupp v. Markgraf*, 95 F.3d 936 (10th Cir.1996)). "The structure and purpose of section 550(a)(1) confirm that a principal does not become an initial transferee simply by using his control over corporate assets to effect a fraudulent transfer." *Id.* at 121.

None of the IRS cases that have been cited by the government requested the court to do what the government is requesting in this case: i.e., to look behind the form of a one-step transaction to find what was, in substance, a two-step transaction. All of the cases that have held that the IRS was not an initial transferee involved clear two-step transactions. In

*Internal Revenue Serv. v. Nordic Village, Inc.* (*In re Nordic Village, Inc.*), 915 F.2d 1049, 1050 (6th Cir. 1990), *rev'd on other grounds*, 503 U.S. 30 (1992), the debtor's principal drew a corporate check on the debtor corporation's account payable to the bank, the bank issued a cashier's check made payable to the IRS, and the principal delivered the cashier's check to the IRS with instructions that it be credited against his outstanding tax liabilities. The Sixth Circuit did not have to decide whether the IRS was an initial or subsequent transferee becasue it concluded that even if the IRS was a subsequent transferee, it did not carry its burden of showing that it took without knowledge of the voidability of the transfer. *Id.* at 1056. In *In re Anton Noll*, 277 B.R. 875 (B.A.P. 1st Cir. 2002), the First Circuit Bankruptcy Appellate Panel focused its analysis on determining "whether the transaction which resulted in receipt of the funds by the IRS was a one step or two step transaction." *Id.* at 880. The court noted that differentiating between a one-step and a two-step transaction is not merely an act of upholding form over substance. *Id.* at 882. "In enacting § 550, Congress allocated the burden of inquiry and the risk on the initial transferee or the entity for whose benefit the transfer was made." *Id.* The court ultimately determined in *Anton Noll* that the IRS was not an initial transferee because the case involved a two-step transaction: the debtor issued a check payable to cash, and the debtor's principal purchased a treasurer's check to satisfy his tax liabilities. *Id.* at 880-81.

> We acknowledge that the instant decision may raise equitable concerns, as corporate creditors may appear to have been defrauded by an unscrupulous principal washing the corporation's funds through a negotiable instrument. And we are hesitant to give the unwarranted impression that we approve of a

modus operandi whereby a corporate principal, by diversion of corporate assets, facilely substitutes pursuit by the government on a tax obligation for that of a corporate fiduciary. Yet, we are bound by the directives of the Bankruptcy Code. "In most bankruptcy cases someone will be injured but [C]ongress has balanced equitable considerations under section 550 by distinguishing between initial transferees and subsequent transferees." Congress has "made its own judgment of who should bear the risk of loss in enacting § 550."

*Anton Noll*, 277 B.R. at 882 (citations an footnote omitted). *See*, *also*, *In re Orange County Sanitation, Inc*., 221 B.R. 323 (Bankr.S.D.N.Y.1997) (holding that IRS was not the initial transferee where the IRS was paid by an ordinary check drawn on the principal's attorney's escrow account, rather than by a check directly from the debtor). *In re Auto-Pak, Inc*., 73 B.R. 52, 54 (D.D.C. 1987) (treating the IRS as a subsequent rather than initial transferee where Auto-Pak's president had the check (payable to the IRS) issued to him, and then had it transformed into a cashier's check payable to the Internal Revenue Service).

The Court declines to adopt the government's argument that the IRS was not the initial transferee because to do so would require the Court to ignore the plain language of the Bankruptcy Code as well as the weight of well-settled authority.[3] Nevertheless, the Court does not agree with the bankruptcy court's determination that the IRS's status as the initial

---

[3]The Court also declines to adopt the government's argument that the disjunctive "or" in § 550(a) may be read to confer discretion on the court to apply principles of equity in determining which person is more appropriately held liable. (Dkt. No. 13, Gov. Resp. Br. 5.) The Court declines to adopt the government's reasoning. The more natural reading of the statute, and the reading most widely adopted, is that the trustee may elect whom to sue: the trustee can recover from any combination of the initial transferee, any entity for whose benefit the transfer was made, and any subsequent transferee, subject to the limitation of a single satisfaction. 5 Collier on Bankruptcy ¶ 550.02[4], at 550-14.

transferee means that the Trustee can recover the entire $82,722 transfer from the IRS without regard to the fact that the IRS had already refunded the majority of the tax overpayment.

The government has consistently argued that under § 6402 of the Internal Revenue Code, 26 U.S.C. § 6402, it was required to make the refund of tax overpayments to Mr. Oonk, the taxpayer, rather than to Regency, who made the overpayment.[4] The bankruptcy court rejected the government's § 6402(a) argument based upon its determination that the government had misread the statute:

> However, the IRS misreads the statute for it says quite clearly that if there has been an overpayment then the overpayment is to be returned to the person who made the overpayment, which in this case was Regency International as opposed to Mr. Oonk unless, of course, the IRS is successful in its second argument that Mr. Oonk was the initial transferee of the refund.

(Tr. of Bench Op. 23-24.)

In other words, the very language of the statute that the IRS relies upon legally obligated the IRS to return the entire amount received from Regency International, that being $82,772, back to Regency International since the IRS's own proofs established that Regency International owed nothing.

---

[4]Section 6402 of the Internal Revenue Code provides in pertinent part:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f), refund any balance to such person.

26 U.S.C. § 6402(a).

(Tr. of Bench Op. 28.)  The bankruptcy court essentially determined that the IRS acted at its own peril when it sent the refund to Mr. Oonk rather than to Regency.

Upon *de novo* review, this Court is convinced that the bankruptcy court erred in its interpretation of § 6402(a).  The bankruptcy court improperly considered § 6402(a) in isolation.  "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  Nevertheless, "a reviewing court should not confine itself to examining a particular statutory provision in isolation."  *Greenbaum v. U.S. E.P.A.*, 370 F.3d 527, 535 (6th Cir. 2004).

> It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.  A court must therefore interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole.

*Id.* at 535-36, (citing *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33, (2000)).

Section 6402(a) must be read in conjunction with other provisions of the Internal Revenue Code, including § 6511, which provides that only a "taxpayer" has standing to claim a refund.  26 U.S.C. § 6511(a).  *See also* 26 C.F.R. § 301.6402-2 (providing that credits or refunds of overpayments may not be allowed unless the "taxpayer" has filed a claim within the statutory period of limitation); IRS General Litigation Bulletin, 1986 WL 621558, IRS

13

LB 304 (Jan. 1986) ("the Commissioner's authority to refund overpayments is limited by I.R.C. § 6402(a) which specifies that refunds of overpayments will be made to 'the person who made the overpayment.' It has, and will continue to be our position that such person on whose part the overpayment is made is the taxpayer whose account the payment was intended to be credited."); *Hartwick Coll. v. United States*, 801 F.2d 608, 612 (2d Cir. 1986) (noting the general rule that claims for tax refunds "must be filed by the taxpayer claiming such refund"). The requirement that claims for tax refunds be made by taxpayers rather than by the entity that remitted the taxes on behalf of the taxpayer is well-understood. For example, although an employer withholds income tax from wages and remits them directly to the IRS on behalf of a taxpayer, any refund of an overpayment is made to the taxpayer rather than to the employer.

Thus, contrary to the bankruptcy court's assumptions, § 6402(a) did not require or even permit the government to refund the overpayment of taxes to Regency. By law, the IRS was required to make the refund to Mr. Oonk, the taxpayer, despite the fact that Regency made the original payment on his behalf. Because Mr. Oonk's amended returns showed that his tax obligations were less than the amount Regency paid the IRS on his behalf, the IRS was obligated by statute to refund the overpayment to Mr. Oonk. The bankruptcy court erred by failing to consider the critical fact that the IRS was required to refund the overpayment to Mr. Oonk, the taxpayer who requested the refund.

The question, then, is whether the IRS, after refunding an overpayment to the taxpayer, should still be required under § 550(a)(1) to remit the entire amount of the original tax payment to the trustee for the debtor who made the payment. The Bankruptcy Code does not address how to apply § 550(a)(1) in this situation. The Court is aware of no case that has allowed a trustee to use § 550(a)(1) to recover a debtor's transfer of money to the IRS after the IRS has already refunded the money to the taxpayer. None of the cases cited to this Court involved a refund situation except *C.F. Foods*.

In *C.F. Foods* the bankruptcy court held that § 550(a)(1) did not apply because the IRS was not the initial transferee of the tax payment. While this Court declines to follow the *C.F. Foods* analysis regarding initial transferees, the Court agrees with *C.F. Foods*' search for a vehicle for preventing the Trustee from recovering the full amount of the transfer from the IRS after the IRS has made a refund to the taxpayer as required by law.

The Sixth Circuit has held that "equitable principles alone" are not sufficient to exempt an initial transferee from its statutory liability under § 550(a)(1). *In re Hurtado*, 342 F.3d at 536. That does not mean that equitable principles cannot be considered. Bankruptcy courts are, after all, courts of equity that apply the principles and rules of equity jurisprudence. *Young v. United States*, 535 U.S. 43, 50 (2002). The Court is confident that Congress did not intend to require the IRS to disgorge the amount of the payment twice, i.e., once to the taxpayer as a refund, and once to the Trustee under § 550(a)(1). If the Court were to require the IRS to pay back the entire amount of the original fraudulent transfer even

15

though it made a required refund to the taxpayer, the Court would in essence be requiring the taxpayers as a whole to fund the debtor's estate. The Court would also be inviting fraud on the government. The Court is confident that this is not what Congress intended.

It is not abundantly clear what legal analysis justifies protecting the IRS from having to disgorge the amount it has already refunded. However, after considering the unique position of the IRS and the critical fact that the IRS had no discretion regarding the tax refund, the Court believes that the best conceptual approach to explaining why the trustee cannot recover the amount of the overpayment that was already refunded to the taxpayer is to understand that the IRS never had dominion and control over the amount of the overpayment. The IRS instructions for the amended individual income tax return, Form 1040X, provide that "Form 1040X will be your new tax return, *changing your original return* to include new information. The entries you make on Form 1040X under the columns headed Correct Amount and Correct Number or Amount are the entries you would have made on your original return had it been done correctly." http://www.irs.gov/pub/irs-pdf/i1040x.pdf (emphasis added). Because Mr. Oonk's amended return was retroactive to the date of his original tax return, and because the IRS had to make the refund to Mr. Oonk, it is logical to conclude that the IRS never had dominion and control over the overpayment. The IRS was a mere conduit for the payment of the refund to Mr. Oonk.[5] Thus, the IRS was not a transferee at all, much less an initial or mediate transferee,

---

[5]The Court recognizes that this determination is directly contrary to the *C.F. Foods* (continued...)

with respect to the amount of the refund. Because the IRS was not a transferee with respect to the amount refunded, the Trustee cannot recover the amount of the refund from the IRS under either § 550(a)(1) or § 550(a)(2).

The Court concludes that the Trustee is only entitled to recover that portion of the transfer that was applied to Mr. Oonk's taxes and was not refunded to Mr. Oonk. Because the record is not clear on how to calculate this amount,[6] the Court will remand this matter to the bankruptcy court to determine the appropriate amount to be recovered by the Trustee.

## IV.

Because the Court has concluded that the portion of the funds transferred by the Debtor to the IRS can be recovered by the Trustee pursuant to § 550(a)(1), the Court must consider the government's alternative argument that the facts were not sufficient to establish a fraudulent transfer under § 548.

Under § 548, a trustee may avoid any transfer "of an interest of the debtor in property"

---

[5](...continued)
determination that the IRS was not a mere conduit because it exercised its prerogative not to release some portion of the funds. *C.F. Foods*, 265 B.R. at 80.

[6]The IRS received $82,722 from Regency, and issued issued two refund checks to Mr. Oonk, one for $22,476.00 and one for $51,995.60. (Dkt. No. 1, Attach. 18, Ex. H, Official Tax Record). The bankruptcy court indicated that the IRS has still not refunded "the remaining $8,250.40"(Bench Op. 25). This is amount arrived at by subtracting the full amount of the two refunds from the original payment. The government, on the other hand, has noted that because the $51,995.60 refund represents a $47,543.00 tax abatement plus interest in the amount of $4,452.60, only $70,019.00 was ultimately refunded to Mr. Oonk as an overpayment. (Dkt. No. 8, Gov. Br. 10.) The government's calculations suggest that $12,753 was applied to Mr. Oonk's 2005 tax liability.

if the debtor (1) "received less than a reasonably equivalent value in exchange for" the transfer, and (2) "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer." 11 U.S.C. § 548.

The government contends that the bankruptcy court erroneously found that Regency was insolvent at the time of the April 17, 2006, transfer of $82,772.00 to the IRS. Specifically, the government contends that it was error for the bankruptcy court to address Regency's liquidation value and not its going concern value in light of the fact that Regency continued in operation for about six months after the transfer. The government also objects to the bankruptcy court's failure to credit Mr. Oonk's testimony regarding expected profit margins and financial health of his company.

As previously noted, this Court applies the clearly erroneous standard of review to the bankruptcy court's findings of fact. *In re Gardner*, 360 F.3d at 557. The bankruptcy court found that Regency was going reasonably well in 2004, at the end of its second year. Nevertheless, it did not value Regency as a going concern because it found that Regency was under-capitalized in 2005 when it invested in the Turion premium line of bamboo flooring. This new product line required a considerable amount of up-front capital and was not expected to produce significant sales until 2007. (Tr. of Bench Op. 18.) Moreover, the bankruptcy court found no basis for giving the business further value on the basis of its good will as an ongoing business. (*Id.* at 17.) The bankruptcy court discounted Mr. Oonk's testimony regarding expected profit margins and the financial health of his company because

someone more objective would have found that Regency lacked the financial means to accomplish what it needed to do to make the new product line profitable. (*Id.* at 20; Supp. Op. 3.) At the time it launched the new product line, Regency was having difficulty raising capital and had to rely on an overdraft amount from Fifth Third Bank on its existing line of credit (*Id.* at 21.)

There is no rigid approach for determining questions of solvency and valuation. *In re Roblin Indus., Inc.*, 78 F.3d 30, 38 (2d Cir. 1996). The finder of fact must be free to arrive at the fair valuation by the most appropriate means under the circumstances. *Id.* In light of the fact that Regency had only been in business for three years, and was experiencing difficulties in raising capital before it incurred the expenses associated with initiating an expensive new product line, the Court cannot say that the bankruptcy court's findings were clearly erroneous or that it applied an improper valuation method.

The government also contends that the bankruptcy court erroneously found that Regency did not receive reasonably equivalent value in exchange for paying Mr. Oonk's taxes. The government contends that this argument should be reviewed *de novo* because the bankruptcy court did not simply make an error in its factual findings, but rather misinterpreted the law of fraudulent conveyances and failed to properly address the reasonably equivalent value prong of the § 548 analysis.

The bankruptcy court found that crediting the transfer against Mr. Oonk's equity account in Regency was of no value because there was no equity in the account to begin with.

(Tr. of Bench Op. 10-11.) The government objects to this statement because the distribution to cover taxes was made pursuant to Mr. Oonk's working arrangement with Regency, and even if the equity had been depleted, Mr. Oonk's services to the company still constituted reasonably equivalent value.

The bankruptcy court cited Mr. Oonk's testimony that whatever was to be paid to him to cover his taxes was to come out of his capital account as opposed to being paid as additional compensation for his services. (Tr. of Bench Op. 10.) The government has not challenged this factual finding. As noted above, the bankruptcy court's finding that Regency was insolvent at the time of the transfer is not clearly erroneous. Given these factual findings, the bankruptcy court did not err in concluding, as a matter of law, that because there was no equity in Mr. Oonk's capital account with Regency, Regency did not receive reasonably equivalent value in exchange for paying Mr. Oonk's taxes.

For the reasons stated, the Court affirms the bankruptcy court's determination that the transfer was subject to avoidance under § 548.

## V.

In summary, the Court affirms the bankruptcy court's determination that the transfer was subject to avoidance under § 548, but reverses the bankruptcy court's determination that the Trustee could recover the entire $82,722 from the IRS pursuant to 11 U.S.C. § 550(a)(1). The Court holds that the Trustee is only entitled to recover that portion of the transfer that was applied to Mr. Oonk's taxes and was not refunded to Mr. Oonk. This case will be

reversed and remanded to the bankruptcy court for further proceedings in accordance with this opinion.

An order consistent with this opinion will be entered.


Dated: <u>October 14, 2010</u>                      <u>/s/ Robert Holmes Bell</u>
                                                    ROBERT HOLMES BELL
                                                    UNITED STATES DISTRICT JUDGE